Robert H. Jaffe, Esq. (RJ9773)
ROBERT H. JAFFE & ASSOCIATES, P.A.
8 Mountain Avenue
Springfield, New Jersey 07081
(973) 467-2246
Attorneys for the Plaintiffs

================================

| | |
|---|---|
| JEFFREY C. BLOOD AND NICHOLAS : | UNITED STATES DISTRICT COURT |
| J. TUFANO, REPRESENTATIVE : | DISTRICT OF NEW JERSEY |
| PLAINTIFFS FOR THE PURPOSE OF A TEST : | |
| CASE, FREDERICK ALTRIETH, ALLAN : | |
| AMERING, JAMES G. AMORESE, JULIE : | |
| L. ANNIS, JAMES D. ANTHONY, COLT : | CIVIL ACTION NO. |
| BACCARO, THOMAS BAKER, JAMES D. : | |
| BALENO, JANE BANAS, GEORGE : | |
| BATTAGLINI, TIMOTHY BECK, JAMES G. : | HON. JUDGE |
| BLUM, PAMELA BLOSS, LAWRENCE : | |
| BOLAND, MICHAEL BOOTH, CHARLES : | |
| SCOTT BROOKS, PAUL D. BROWN, : | |
| MICHAEL BUNTING, DAVID M. : | |
| CAVALIERI, DONALD J. CLAR, JR., : | |
| MICHAEL P. CORNELIA, GLENN A. : | |
| COLE ROBERT CONTOIS, JOHN E. : | |
| COWLEY, MICHAEL DEGUGLIELMO, : | |
| NICHOLAS DELEO, SAMUEL A. DELUCA, : | |
| WILLIAM F. DENSON, FRANK DIGIORGIO, : | |
| SHIRLEY A. DINATALE, MAUREEN F. : | |
| DUIGNAN, ALLEN F. DUPRA, MARGARET : | |
| A. DUPRA, CRAIG W. FOREMAN, MARIE : | COMPLAINT |
| GAROFONO, FREDERICK GILLEY, DAVID : | |
| J. GIUMENTO, ALFRED GONNELLA, : | |
| LOUISE GRANICA, DONALD B. GRAUPMAN, : | |
| DALE GREEN, JAMES T. GREEN, FRANK : | |
| HACKNAUER, ROBERT G. HALL, MARTHA : | |
| E. HEBERGER, DAVID HEBERLE, GUY M. : | |
| HEBERLE, LUIS A. HERNANDEZ, JR., : | |
| RONALD L. HOLLAND, THOMAS R. HULL, : | |
| AUDREY D. JACKSON, DAVID R. : | |
| JACKSON, MERWIN JACOBS, WILLIAM G. : | |
| JONES, EWA Z. KAJOSZ, DENNIS KAMP, : | |
| HEESUNG KANG, DOUGLAS C. KANOUS, : | |
| DEBORAH A. KRUSEMARK, JOHN LAHR, : | |
| GWEN H. LAUSIN, JOHN LAWSON, : | |
| MICHAEL LYON, EDWARD MAGIN, KATHY : | |
| MALOWSKY, JACQUELINE MARCELLA, MARC : | |
| A. MARULLO, BRUCE McCANNON, : | |
| TIMOTHY McARDLE, JAMES A. McGALL, : | |
| JOSEPH G. MELINIS, JAMES A. : | |
| MICKET, LISA MILLER, EDWARD T. : | CAPTION CONTINUED ON NEXT PAGE |
| MISKINIS, MICHEL F. MOLAIRE, : | |
| TULIENNE R. MOLAIRE, STEPHEN : | |

MONAGHAM, TERRY N. MORGANTI, SUSAN    :
L. MUDRZYNSKI, CRAIG MUIR, YEE        :
SEUNG NG, ALFRED NUCCI, JAMES V.      :
ORCHARD, II, RAYMOND C. OTTO,         :
YU-CHUN OWN, PATRICIA E. PEPPARD,     :
JAMES PINK, DAVID E. PLOETTNER,       :
ALAN PRACHEL, FRANK PROVO, JOHN F.    :
QUESTER, GREGORY ROMBOLA, CHARLES     :
I. ROBINSON, SR., RAYMOND L.          :
ROSSBOROUGH, JEAN-CLAUDE ROUCHON,     :
MICHAEL SADOWSKI, STAN SAKAL, LORI    :
SCHIRMER, THOMAS K. SCIURBA, PAUL     :
SCUDDER, DOROTHY SHAFER, LUCILE W.    :
SLOAN, JOY D. SMITH, LARRY SPEER,     :
RONALD STEPHENS, DAVID P. STORY,      :
HWAI-TZUU TAI, GROVER J. THOMAS,      :
DONALD L. TROENDLE, JEAN TROST,       :
SUSAN K. UDICIOUS, LORI VanEPPS,      :
CURTIS VERNON, DANIEL VESPONE,        :
SHARON L. VISCOMI, JANICE             :
VOLLERTSEN, BRENDA VOGT, DAVID P.     :
WARREN, THOMAS J. WETZEL, MARK        :
WILDE, FREDRIC R. WILLER, DAWN M.     :
WITHEY, THEOPHILUS C. WITUSZYNSKI,    :
DARLENE WOHLERS-PIPER, CAROL YOPP,    :
ANNA ZAPASNIK, ERIC K. ZEISE,         :
MARTIN J. ZUBER AND THEODORE ZUBIL,   :
                                      :
              PLAINTIFFS,             :
v.                                    :
                                      :
EASTMAN KODAK COMPANY, KODAK          :
RETIREMENT INCOME PLAN, AND           :
KODAK RETIREMENT INCOME PLAN          :
COMMITTEE,                            :
                                      :
              DEFENDANTS.             :
===============================

    Plaintiffs Jeffrey C. Blood, Nicholas J. Tufano,

representative plaintiffs for the purpose of a test case, Frederick

Altrieth, Allan Amering, James G. Amorese, Julie L. Annis, James D.

Anthony, Colt Baccaro, Thomas Baker, James D. Baleno, Jane Banas,

George Battaglini, Timothy Beck, James G. Blum, Pamela Bloss,

Lawrence Boland, Michael Booth, Charles Scott Brooks, Paul D.

Brown, Michael Bunting, David M. Cavalieri, Donald J. Clar, Jr., Michael P. Cornelia, Glenn A. Cole, Robert Contois, John E. Cowley, Michael Deguglielmo, Nicholas DeLeo, Samuel A. DeLuca, William F. Denson, Frank DiGiorgio, Shirley A. DiNatale, Maureen F. Duignan, Allen F. Dupra, Margaret A. Dupra, Craig W. Foreman, Marie Garofono, Frederick Gilley, David J. Giumento, Alfred Gonnella, Louise Granica, Donald B. Graupman, Dale Green, James T. Green, Frank Hacknauer, Robert G. Hall, Martha E. Heberger, David Heberle, Guy M. Heberle, Luis A. Hernandez, Jr., Ronald L. Holland, Thomas R. Hull, Audrey D. Jackson, David R. Jackson, Merwin Jacobs, William G. Jones, Ewa Z. Kajosz, Dennis Kamp, Heesung Kang, Douglas C. Kanous, Deborah A. Krusemark, John Lahr, Gwen H. Lausin, John Lawson, Michael Lyon, Edward Magin, Kathy Malowsky, Jacqueline Marcella, Marc A. Marullo, Bruce McCannon, Timothy McArdle, James A. McGall, Joseph G. Melinis, James A. Micket, Lisa Miller, Edward T. Miskinis, Michel F. Molaire, Tulienne R. Molaire, Stephen Monagham, Terry N. Morganti, Susan L. Mudrzynski, Craig Muir, Yee Seung Ng, Alfred Nucci, James V. Orchard II, Raymond C. Otto, Yu-Chun Own, Patricia E. Peppard, James Pink, David E. Ploettner, Alan Prachel, Frank Provo, John F. Quester, Gregory Rombola, Charles I. Robinson, Sr., Raymond L. Rossborough, Jean-Claude Rouchon, Michael Sadowski, Stan Sakal, Lori Schirmer, Thomas K. Sciurba, Paul Scudder, Dorothy Shafer, Lucile W. Sloan, Joy D. Smith, Larry Speer, Ronald Stephens, David P. Story, Hwai-Tzuu Tai, Grover J. Thomas, Donald L. Troendle, Jean Trost, Susan K.

Udicious, Lori VanEpps, Curtis Vernon, Daniel Vespone, Sharon L. Viscomi, Janice Vollertsen, Brenda Vogt, David P. Warren, Thomas J. Wetzel, Mark Wilde, Fredric R. Willer, Dawn M. Withey, Theophilus C. Wituszynski, Darlene Wohlers-Piper, Carol Yopp, Anna Zapasnik, Eric K. Zeise, Martin J. Zuber and Theodore Zubil, plaintiffs, complaining of defendant Eastman Kodak Company ("Kodak"), defendant Kodak Retirement Income Plan ("the traditional KRIP Plan" or simply "the Plan"), and defendant Kodak Retirement Income Plan Committee ("KRIPCO"), state as follows:

<u>JURISDICTION AND VENUE</u>

1.   Jurisdiction of this complaint is based on the fact that it raises a federal question required to be adjudicated by a federal court.  <u>See</u> 28 U.S.C. § 1331.  The plaintiff in an action under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), is entitled to bring suit in federal court "[a] to recover benefits due to him under the terms of his plan, [b] to enforce his rights under the terms of the plan, or [c] to clarify his rights to future benefits under the terms of the plan."  In addition, a plan participant may bring a civil action

> (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3).

-4-

2.    Jurisdiction of the subject matter of this complaint is further predicated on Section 102 of ERISA, 29 U.S.C. § 1022, which provides in pertinent part that summary plan descriptions ("SPDs") distributed to participants in pension plans governed by ERISA provisions must contain information concerning any provisions of the pension plan dealing with circumstances which may result in the denial or loss of benefits.

3.    Jurisdiction of the subject matter of this complaint is further predicated on Section 104 of ERISA, 29 U.S.C. § 1024, which provides in pertinent part that a summary of any material modification in the terms of the plan "shall be furnished not later than 210 days after the end of the plan year in which the change is adopted to each participant."

4.    Jurisdiction of the subject matter of this complaint is also based upon ERISA Section 404(a), 29 U.S.C. § 1104(a), which provides in relevant part that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and – (A) for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries."

5.    Venue of this action is properly laid in the District of New Jersey pursuant to Section 1391(b) of the United States Judicial Code, 28 U.S.C. § 1391(b), which provides in pertinent part that suit may be brought in "a judicial district where any defendant resides, if all defendants reside in the same State."

-5-

Since defendant Kodak is a New Jersey corporation and the defendant traditional KRIP Plan is administered by Kodak employees who constitute defendant KRIPCO, the defendant traditional KRIP Plan and defendant KRIPCO are deemed to be residents of New Jersey.

6.    The named plaintiffs have standing to bring this action pursuant to ERISA Section 3(7), 29 U.S.C. § 1002(7) as plan participants by virtue of the fact that they were not paid the full value of their accrued pension benefits or as former participants in the defendant traditional KRIP Plan with colorable claims for reinstatement.  Alternatively, the plaintiffs have standing to sue for reinstatement as participants in the traditional KRIP Plan because, on information and belief, in 1999 they were not paid the full value of their participation in the Plan when transferred to off-balance-sheet business entities.

<u>PARTIES</u>

7.    Plaintiff Blood presently resides at 1001 Oak Ridge Road, Victor, New York 14564.  He was born on April 30, 1953.

8.    Plaintiff Tufano presently resides at 40 Fenton Road, Rochester, New York 14624.  He was born on December 28, 1948.

9.    Plaintiffs Blood and Tufano bring this action as "test cases" of the type acknowledged and approved by the Supreme Court in <u>Taylor v. Sturgell</u>, 128 S. Ct. 2161 (2008), and by the Third Circuit in <u>E.I. DuPont de Nemours and Co. v. United States</u>, 460 F.3d 515 (3d Cir. 2006).  The remaining plaintiffs are similarly situated to plaintiffs Blood and Tufano. Accordingly, the relief

-6-

afforded to plaintiffs Blood and Tufano will apply with equal force to the similarly situated plaintiffs.

10.   The other plaintiffs with respect to which plaintiffs Blood and Tufano serve as test case representatives are identified above and are further identified in a schedule attached as Exhibit "A" to this complaint showing their name, address, additional service time to which they are entitled as a consequence of the amendment to the plan documents of the traditional KRIP Plan dated December 27, 2006 to be effective January 1, 2007, and the amount paid deemed to be the lump sum value of their participation in the traditional KRIP Plan.

11.   Defendant Kodak, although organized as a New Jersey corporation, maintains offices at 343 State Street, Rochester, New York 14650, as do defendant KRIPCO and the defendant traditional KRIP Plan.

<u>STATEMENT OF FACTS</u>

12.   Defendant KRIPCO is the plan administrator for the defendant traditional KRIP Plan, which is a defined benefit pension plan that promises a retirement annuity to Kodak employees based upon their accrued service and their average participating compensation.

13.   The plaintiffs use the word "traditional" to distinguish the KRIP Plan at issue from a later version which features the option of cash balance retirement benefits.

–7–

14.    The defendant traditional KRIP Plan is "back loaded." That is, assuming plaintiff Blood reaches the age of 50 and has 25 years of service, he would be entitled to twenty-five (25%) percent of his normal retirement benefits.    Five years later, when plaintiff Blood achieves the age of 55 and has 30 years of service, he would be entitled to seventy-five (75%) percent of his normal retirement benefits.    This exponential increase in pension entitlement is reflected in a parallel exponential increase in pension liabilities created by older long-term workers.    These circumstances provide the motive for the defendants to develop a scheme and plan to remove persons such as plaintiff Blood from coverage by the traditional KRIP Plan before their pension entitlement begins its rapid rise.

15.    Representative plaintiffs Blood and Tufano are victims of a comprehensive scheme of concealment whereby the defendants compelled plan participants in the defendant traditional KRIP Plan to sell or waive further participation in the Plan for consideration deemed to be the lump sum value of their participation.

16.    The ability of plaintiffs Blood and Tufano to plead the particulars of the defendants' concealment scheme is undercut by the defendants' refusal to supply documents in their possession that were requested during the administrative claims process and in the related action entitled Dupont v. Sklarsky, No. 3:08-cv-01724- JAP-JJH.    Contrary to the position taken by the defendants in

-8-

denying the request by counsel for the plaintiffs for documents relating to the establishment of Nexpress Solutions, L.L.C. ("Nexpress") and Heidelberg Digital L.L.C. ("Heidelberg") as the result of agreements between defendant Kodak and Heidelberger Druckmaschinen AG, these documents are relevant and pertinent to the allegations of a concealment scheme made in this complaint.

17.  Plaintiff Blood was hired by Kodak in July 20, 1981.

18.  On or about July 20, 1986, plaintiff Blood became vested as a participant in the defendant traditional KRIP Plan.

19.  Plaintiff Blood held executive-level positions in Kodak's copier division before he was transferred to Heidelberg on May 10, 1999.

20.  At that time, plaintiff Blood became a vice president at Heidelberg.

21.  In May 2004, Kodak purchased all of the stock in Heidelberg and merged it with NexPress to form NexPress Solutions, Inc.

22.  Plaintiff Blood continued to work for NexPress Solutions, Inc. until such time as it was acquired by Kodak sometime during May or June of 2006.

23.  On June 26, 2006, plaintiff Blood was restored to the Kodak payroll as an executive.

24.  Plaintiff Blood was laid off by Kodak on May 28, 2007 due to financial instability in Kodak's copier division.

25.   Plaintiff Tufano was hired by Kodak on December 1, 1975.

26.   On or about December 1, 1980, plaintiff Tufano became vested as a participant in the defendant traditional KRIP Plan.

27.   Plaintiff Tufano held managerial positions in Kodak's electrophotographic division before he was transferred to Heidelberg on or about May 10, 1999.

28.   Plaintiff Tufano held similar positions at Heidelberg.

29.   After Heidelberg was merged with NexPress to form NexPress Solutions, Inc., plaintiff Tufano continued to work for NexPress Solutions, Inc. until such time as it was acquired by Kodak sometime during May or June of 2006.

30.   On June 26, 2006, plaintiff Tufano was restored to the Kodak payroll as a manager in the electrophotographic divisions.

31.   In 1999, the controlling SPD applicable to plaintiffs Blood and Tufano as well as all those similarly situated was the SPD describing KRIP which appeared in the "You & Kodak" 1997 Employee Handbook.

32.   The defendants, with malicious intent, deliberately concealed the fact that from 1982 through 1998 Kodak had amended the KRIP plan document to include in the calculation of retirement benefits under the traditional KRIP Plan time in service at other employers, including International Business Machines Corporation, Amersham Corporation, Inc., Digital Equipment Corporation, Imaging Financial Services, Inc. dba "EKCC," and Imation Corp.

33.  While the 1997 SPD does in fact state that employees who joined Kodak from IBM and Amersham Corporation may elect optional forms of benefit, "but only on the amount of the accrued benefit that was transferred to Kodak," the manner in which this disclosure is worded in the 1997 SPD constitutes an affirmative action to cover up the defendants' breach of fiduciary obligations in singling out Kodak employees previously employed by IBM or Amersham as the only group to be given credit for time in service at companies other than Kodak.

34.  As an integral part of their concealment scheme, the defendants prepared question and answer documents ("Q&A documents") and other communications which consisted of representations to plaintiffs Blood and Tufano as well as other Kodak employees named in this complaint that, because of their transfer to off balance sheet subsidiaries or joint ventures such as Nexpress and Heidelberg, their pension entitlement would no longer "grow."

35.  In a document entitled "Kodak Questions And Answers For Employees Transferring To NexPress" was the following question: "If I do not take my KRIP benefit when I move to the new company, does my KRIP benefit grow?"  The response provided in the Q&A document was: "Your age 65 Accrued Benefit will not increase after the Transfer Date...."

36.  In a Kodak Q&A document which specifically addressed the question of whether Kodak employees transferred to Nexpress should take a distribution of the lump sum value of their KRIP benefit

when transferred, the question posed was: "[Assuming] I elect to take a distribution of my KRIP benefit, does that mean I am eligible for Kodak retiree welfare benefits such as health care, dental and life insurance?" The pertinent part of the answer to that question as posed constitutes what appears to be a deliberate actionable misrepresentation, to wit: "If you are vested, but not retirement eligible, you are not eligible for Kodak retiree benefits now, <u>or in the future</u>." (Emphasis added).

37.  Based on the SPD describing the traditional KRIP Plan and the ancillary retirement benefits to which a KRIP participant would be entitled, this is a misrepresentation because, as now appears to be the fact, when reemployed by Kodak as a KRIP participant you are eligible for a substantial annuity and the subsidized ancillary retirement welfare benefits upon reaching the qualifying number of 85 points based upon years of service and your age.

38.  The foregoing excerpts from Kodak Q&A documents demonstrate that defendant KRIPCO should be held liable for making predictions in those documents concerning the eligibility for Kodak retirement benefits in the future.

39.  An additional relevant misrepresentation or half truth set forth in the written materials provided to Kodak employees in connection with their transfer to Nexpress was the following statement: "Generally, Kodak does not rehire those who left in a divestiture." The misleading nature of this statement is evidenced by the fact that, subsequent to the Nexpress joint

venture being dissolved, the plaintiffs were restored to the Kodak payroll.

40. Another key question and answer made part of the Kodak Q&A documents distributed to the plaintiffs at the time they were transferred was the following: "Is there any significance of having 75 points as of the transfer date even though I reach the 75 point milestone after December 31, 1995 and am not grandfathered?" The answer given by the defendants was that: "Once you leave Kodak, there is no opportunity to reach 75 points." This response was false and misleading because, if the plaintiffs had not "sold" their participation in the traditional KRIP Plan, upon being restored to the Kodak payroll and being credited with time in service at Nexpress or Heidelberg, they would have the opportunity to reach 85 points and qualify to receive the favorable subsidized ancillary retirement welfare benefits received by other Kodak employees who continue to be participants in KRIP.

41. In violation of fiduciary obligations owed to plan participants to provide all information material to the decision to "sell" their interest in the traditional KRIP Plan at the time of their transfer, the defendants failed to inform the plaintiffs that Kodak's transactions with off balance sheet subsidiaries or joint ventures were entered into with knowledge of the likelihood that the transferred Kodak employees would ultimately be restored to the Kodak payroll in accordance with past corporate practices and that their time spent at the off balance sheet subsidiaries or joint

ventures would be included in the calculation of their retirement benefits under the traditional KRIP Plan.

42. As an integral part of the concealment scheme, on or about December 27, 2006, to be effective January 1, 2007, the plan document for the defendant traditional KRIP Plan was amended to provide that time in service at the off balance sheet subsidiaries or joint ventures would count toward accrued and total service.

43. The December 27, 2006/January 1, 2007 amendment to the plan document of the traditional KRIP Plan constitutes a clear repudiation of representations made in 1999 by the defendants that, if plaintiffs Blood and Tufano did not take the lump sum payment option when they were transferred to Heidelberg, their participation in the traditional KRIP Plan would not grow.

44. The concealment scheme detailed in this complaint consists of representations regarding whether the plaintiffs' participation in the defendant traditional KRIP Plan would "grow." The statements made by the defendants in Q&A documents were made to induce the plaintiffs to "sell" their participation.

45. When these misrepresentations were made, the defendants concealed material facts relating to past corporate practices where employees transferred to off balance sheet entities would be reinstated and have their time in service at those entities be included in the calculation of their pension entitlement.

46. As held by the Second Circuit, "when a plan administrator speaks, it must speak truthfully." Ballone v. Eastman Kodak Co.,

109 F.3d 117 (2d Cir. 1997). Therefore, the plaintiffs contend that the concealment scheme at issue initiated in 1998–1999 continued as an active policy through January 1, 2007, when the KRIP Plan document was amended to provide that time in service at the Nexpress and Heidelberg entities would be included in the calculation of the pension entitlement.

47. The fact remains that, despite the obligation of the defendants to disclose amendments to the company's benefit plans in summaries of material modifications ("SMMs") pursuant to ERISA Section 104, the December 26, 2006/January 1, 2007 amendment was not disclosed in the July 2007 SMM and would have remained concealed but for the fact that one of the plaintiffs, at the request of counsel for the plaintiffs, obtained from a repository in India a copy of the KRIP Plan document which included Appendix D, the source of the information regarding the amendment.

48. The defendants, as part of their concealment scheme, failed to provide any information about the potential benefits of remaining a participant in the Plan, the likelihood that transferred Kodak employees would ultimately be restored to the Kodak payroll in accordance with past corporate practices, and that their time spent at the off balance sheet subsidiaries or joint ventures would be included in the calculation of their retirement benefits under the traditional KRIP Plan.

49. Plaintiffs Blood and Tufano were transferred from Kodak to Heidelberg on approximately May 10, 1999.

50. The amount of the lump sum distribution received by plaintiff Blood at the time of his termination was $98,665.

51. On information and belief, the $98,665 payment to plaintiff Blood substantially understated the lump sum value of his participation in the Plan.

52. Specifically, based on information contained in the 1997 SPD as to how to calculate the lump sum value of plaintiff Blood's pension entitlement, the actual lump sum value of his pension entitlement was estimated to be $117,657, an amount 16 percent more than the $98,665 he received.

53. The amount of the lump sum distribution received by plaintiff Tufano at the time of his termination was $141,629.

54. On information and belief, the $141,629 payment to plaintiff Tufano substantially understated the lump sum value of his participation in the Plan.

55. Specifically, based on information contained in the 1997 SPD about how to calculate plaintiff Tufano's pension entitlement, the actual lump sum value of his pension entitlement was about $192,029, an amount 26 percent more than the $141,629 he received.

56. By virtue of the December 27, 2006/January 1, 2007 amendment to the defendant traditional KRIP Plan, plaintiffs Blood and Tufano would have received credit in the defendant traditional KRIP Plan for the time they worked at Heidelberg and NexPress Solutions, Inc. from 1999 to 2006 had they not been induced by the concealment scheme to sell their participation in the Plan for

-16-

amounts substantially less than the lump sum value of their pension entitlements.

57.  If plaintiff Blood had not "sold" his participation in the traditional KRIP Plan, based on information provided in SPDs as to how to calculate the lump sum value of his pension entitlement, the lump sum value of his pension entitlement when he retired on May 28, 2007 would have been approximately $326,753 or an amount $228,088 more than he was paid in 1999.

58.  If plaintiff Tufano had not "sold" his participation in the traditional KRIP Plan, based on information provided in SPDs as to how to calculate the lump sum value of his pension entitlement, the lump sum value of his pension entitlement as of December 31, 2007 would have been approximately $527,514 or an amount $385,885 more than he was paid in 1999.

59.  While defendant Kodak retains the right to terminate the subsidized welfare benefits program which only participants in the traditional KRIP Plan are entitled to receive -- and have recently announced the planned elimination of dental coverage and life insurance benefit, a 10-year phase out of paying for dependents' medical coverage, and a 10-year phasing in of shifting more of the health insurance premium costs to retirees -- the fact remains that Kodak-funded subsidized medical benefits still exist and, in the absence of any information relating to this investment decision, plaintiffs Blood and Tufano were improperly induced to give up these valuable retirement benefits.

60.  By way of a letter dated October 17, 2007, counsel for the plaintiffs submitted their administrative claims to the defendants.

61.  By way of a letter dated March 19, 2008, the defendants denied the administrative claims articulated in the October 17, 2007 letter.

62.  By way of a letter dated April 29, 2008, the defendants informed counsel for the plaintiffs that plaintiff Tufano's administrative claims — which had originally and inadvertently been included in a March 14, 2008 letter filed on behalf of Kodak employees transferred in 1998 to the Kodak Polychrome Graphics joint venture of Kodak and Sun Chemical Corp. — would be included with the administrative claims denied by way of the defendants' March 19, 2008 letter.

63.  By way of a letter dated May 16, 2008, plaintiffs Blood and Tufano as well as other similarly situated plaintiffs appealed the defendants' initial denial of their administrative claims.

64.  By way of a letter dated September 15, 2008, the defendants denied the appeal of representative plaintiffs Blood and Tufano made in the May 16, 2008 letter.

65.  Plaintiffs Blood and Tufano therefore have complied with the need to exhaust administrative remedies before filing suit.

66.  To the extent that plaintiffs Blood and Tufano may be deemed to have failed to raise during the administrative claims process any claims made in this complaint, plaintiffs Blood and

-18-

Tufano should be afforded the protections of The Futility Doctrine. This doctrine surfaces in situations where the plaintiff can demonstrate that resorting to administrative remedies would have been futile.  See <u>Berger v. Edgewater Steel Co.</u>, 911 F.3d 911(3rd Cir. 1990); <u>see also</u> <u>Canale v. Yegen</u>, 782 F.Supp. 963 (D.N.J. 1992), (Sarokin, J.)

67.  In order to merit waiver of the exhaustion of administrative remedies requirement, the claimant must not provide "merely bare allegations of futility, but a 'clear and positive' showing of futility."  782 F.Supp at 973 citing <u>Market v. Health Care Corp. of Mid-Atlantic (Care First)</u>, 872 F.2d 80, 83 (4th Cir. 1989).  It is hard to conceive of a more futile circumstance than sending another letter petition to the same Plan Administrator who has already stated in the September 15, 2008 letter that "Since the claims are untimely, KRIP Section 13.03(d)(3) requires that they be denied, and it is not necessary to address their merits."

68.  This complaint was filed within ninety days of the receipt by plaintiffs Blood and Tufano of the defendants' denial of their administrative claims.

69.  Pursuant to Section 13.03(e)(3) of the KRIP Plan document, plaintiffs Blood and Tufano had 90 days from the date of the letter to "commence" This action.  The plaintiffs have timely filed and commenced this action in accordance with Fed. R. Civ. P. 3, which states that "[a] civil action is "<u>commenced</u>" by filing a complaint with the court."  (Emphasis added)

-19-

70.   Representative plaintiffs Blood and Tufano, as well as all plaintiffs identified in the caption of this complaint and in the accompanying Exhibit "A," seek relief that is primarily equitable in nature consisting of reinstatement in the traditional KRIP Plan.

**COUNT ONE**
**(Claims to Enforce**
**the Terms of the Plan –**
**ERISA Section 502(a)(1)(B))**

71.   The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through seventy of this complaint as if they had been more fully set forth herein at length.

72.   Pursuant to ERISA Section 502(a)(1)(B), plaintiffs Blood and Tufano ask this court to enforce Section 7.06 of the plan document of the defendant traditional KRIP Plan, captioned "Repayment, Restoration, or Correction." Section 7.06 provides in relevant part that, if a participant in the defendant traditional KRIP Plan was not given accurate information regarding the form or timing of benefit options offered under the Plan, such participant will be given the opportunity through "appropriate corrective action" taken by KRIPCO "to elect any such optional forms of benefit."

73.   Defendant KRIPCO has been given the authority to interpret Section 7.06 of the plan document of the traditional KRIP Plan.   However, by virtue of the fact that the defendants are primarily responsible for perpetrating the concealment scheme which

–20–

led to plaintiffs Blood and Tufano agreeing to "sell" their participation in the defendant traditional KRIP Plan, these defendants are operating under a severe conflict of interest as described in the Supreme Court's recent decision in <u>Metropolitan Life Ins. Co. v. Glenn</u>, 128 S. Ct. 2343 (2008).

74.   Under the foregoing circumstances, plaintiffs Blood and Tufano seek the remedy of reinstatement as participants in the traditional KRIP Plan.   In accordance with equitable principles, plaintiffs Blood and Tufano hereby tender the monies they received in 1999 back to Kodak with the understanding that this amount may be increased by a reasonable interest factor.

<u>COUNT TWO</u>
(Claims for Equitable Relief –
ERISA Section 502(a)(3))

75.   The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through seventy-four of this complaint as if they had been more fully set forth herein at length.

76.   Under equitable principles applicable to this action, plaintiffs Blood and Tufano are entitled to an equitable lien on the monies held by defendant KRIPCO in trust to pay retirement benefits to plan participants who are reinstated to their position as participants in the traditional KRIP Plan.   The amount of the equitable lien is the difference between the participation in the traditional KRIP Plan of plaintiffs Blood and Tufano and the monies

they received alleged to be the lump sum value of their participation in April/May 1999.

77. In light of the defendants' scheme and their repeated and ongoing concealment of information — including the likelihood that transferred Kodak employees would be restored to the Kodak payroll in accordance with past corporate practices that their time spent at the off balance sheet subsidiaries or joint ventures would be included in the calculation of their retirement benefits under the traditional KRIP Plan, the amendment to the traditional KRIP Plan that took effect January 1, 2007, and the documents surrounding Kodak's transactions with Heidelberg and NexPress -- plaintiffs Blood and Tufano seek the equitable remedy of reinstatement as participants in the Plan pursuant to ERISA Section 502(a)(3).

78. The plaintiffs' claims are timely under 29 U.S.C. § 1113, entitled "Limitation of actions," which states in pertinent part that "No action may be commenced under this title with respect to a fiduciary's breach of any responsibility, duty, or obligation . . . after the earlier of . . . six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or . . .three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; <u>except that in the case of fraud or concealment, such action may be commenced not later than</u>

<u>six years after the date of discovery of such breach or violation</u>."
(Emphasis added)

79.   The plaintiffs submit that, in addition to concealing material information from plan participants, the actions of the defendants as articulated by the plaintiffs in claim letters submitted during the administrative process were not prudent and violated the duty of loyalty to plan participants.  The presence of conflicting interests, including but not limited to protecting the accrued pension benefits of plan participants as compared to the potential costs savings to be experienced by the employer, imposes on fiduciaries the obligation to take precautions to ensure that their duty of loyalty is not compromised.

80.   The named defendants breached both their fiduciary duty and their duty of loyalty to plaintiffs Blood and Tufano as well as to similarly situated plan participants.

81.   In accordance with equitable principles, plaintiffs Blood and Tufano hereby tender the monies they received in 1999 back to Kodak with the understanding that this amount may be increased by a reasonable interest factor.

82.   The acts and conduct of the defendant traditional KRIP Plan and the individual members of defendant KRIPCO also constitute a violation of fiduciary obligations owed to inform plan participants of all material facts required for them to make an informed decision as to whether to "sell" their participation in the traditional KRIP Plan.

83.   Included in the material information concealed from plaintiffs Blood and Tufano was the fact that the defendants had previously engaged in a course of conduct whereby the Kodak employees transferred to off balance sheet subsidiaries or joint ventures when restored as Kodak employees had their years in service at these affiliated entities be included in the years of service which constituted a major factor in the calculation of the pension benefits.

84. Among the defendants' other breaches of fiduciary obligations which entitle the plaintiffs to the equitable remedy of reinstatement as participants in the Plan pursuant to ERISA Section 502(a)(3) are the concealment of the amendment to the traditional KRIP Plan that took effect January 1, 2007 and the refusal to supply the plaintiffs with documents they requested.

## COUNT THREE
### (Claims for Declaratory Relief)

85.   The plaintiffs repeat and reallege each and every allegation set forth in paragraphs one through eighty-four of this complaint as if they had been more fully set forth herein at length.

86.   The defendants' letters denying the plaintiffs' administrative claims confirm the allegations made in this complaint that the defendants represented to the plaintiffs that the value of their participation in the traditional KRIP Plan would

-24-

"not grow" if left in that Plan because no credit would be given for time in service at Nexpress or Heidelberg.

87.   These same letters confirm the plaintiffs' allegation that Kodak represented in Q&A documents and public meetings at the time the plaintiffs were transferred that it would not repurchase Nexpress or Heidelberg and that divested employees would not be rehired.

88.   The representations concerning the benefit of remaining a participant in the traditional KRIP Plan were falsely made.   The issue of whether these false statements were part of a concealment scheme can only be determined by an examination of the memoranda and documents relating to the transactions between Kodak and Heidelberger Druckmaschinen AG that resulted in the formation of Nexpress and Heidelberg.

89.   The defendants denied requests for documents so pertinent to the plaintiffs' administrative claims and added insult to injury by stating that defendant KRIPCO had reviewed the requested documents and determined that they were not relevant to the plaintiffs' administrative claims.

90.   The aforementioned denial of the plaintiffs request for documents relating to their claims of a concealment scheme warrants declaratory relief by this Court to require that the defendants provide all documents in their possession relating to the establishment of Nexpress or Heidelberg.

WHEREFORE, plaintiffs Blood and Tufano hereby demand judgment against the defendants, jointly and severally, on Counts One, Two, and Three of this complaint as follows:

(a) For an order awarding plaintiffs Blood and Tufano reinstatement as participants in the defendant traditional KRIP Plan;

(b) For an order awarding plaintiffs Blood and Tufano, pursuant to Section 7.06 of the KRIP Plan, the amounts which they were underpaid in 1999, as increased by a reasonable interest factor;

(c) For an order establishing an equitable lien on trust monies held by the defendants in the net amount value of the pension entitlements of plaintiffs Blood and Tufano as well as the value of the subsidized welfare benefits due to participants in the traditional KRIP Plan;

(d) For an order requiring that the defendants provide to the plaintiffs all documents in their possession related to the establishment of the Nexpress or Heidelberg entities;

(e) For an order awarding reimbursement of all litigation expenses incurred, including, but not limited to, reasonable attorney's fees and other costs of suit; and

(f) For an order awarding such other and further relief as this court may deem appropriate and equitable in the premises.

Dated: December 12, 2008        ROBERT H. JAFFE & ASSOCIATES, P.A.
                                Attorneys for Plaintiffs


                                    Robert H. Jaffe

                                        /s/
                                _____
                                Robert H. Jaffe, Esq. (RJ9773)
                                Robert H. Jaffe & Associates
                                8 Mountain Avenue
                                Springfield, New Jersey
                                (973) 467-2246

<u>CERTIFICATION PURSUANT TO L.Civ.R. 11.2</u>

I certify that to the best of my knowledge and upon information and belief, the matter in controversy is not the subject of any other action in any other court, nor is it the subject of any pending arbitration or administration proceeding, now or contemplated.

Dated: December 12, 2008

                              ROBERT H. JAFFE & ASSOCIATES, P.A.
                              Attorneys for Plaintiffs


                                Robert H. Jaffe

                         _____/s/_____
                              Robert H. Jaffe


<u>CERTIFICATION PURSUANT TO L.Civ.R. 201.1</u>

The within matter does not fall within the requirements for compulsory arbitration, set forth in Local Civil Rule 201.1 of the New Jersey District Court Rules, in that the relief sought herein is in excess of $150,000, exclusive of costs and interest.

Dated: December 12, 2008

                              ROBERT H. JAFFE & ASSOCIATES, P.A.
                              Attorneys for Plaintiffs


                                Robert H. Jaffe

                         _____/s/_____
                              Robert H. Jaffe


-28-