**NOT FOR PUBLICATION**                                                                    **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
JEFFREY C. BLOOD, *et al.*            :
                                      :
                                      :
          Plaintiffs,                 :
                                      :   Civil Action No. 08-6123 (JAP)
          v.                          :
                                      :
EASTMAN KODAK COMPANY, *et al*,       :
                                      :   *consolidated with*
          Defendants.                 :
_____:
DAVID C. FISH, *et al.*               :
                                      :   Civil Action No. 09-0129 (JAP)
                                      :
          Plaintiffs,                 :
                                      :   **OPINION**
          v.                          :
                                      :
EASTMAN KODAK COMPANY, *et al*,       :
                                      :
                                      :
          Defendants.                 :
_____:

PISANO, District Judge.

Presently before the Court is a Motion to Dismiss Plaintiffs' Amended Complaints pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) brought by Defendants Eastman Kodak Company ("Kodak"); the Kodak Retirement Income Plan ("KRIP"); and the KRIP Committee ("collectively Defendants") and a Motion for Rule 11 Sanctions against Plaintiff's Counsel. For the reasons discussed below, Defendants' Motion to Dismiss is granted

1

but the Motion for Rule 11 Sanctions is denied.

I.      BACKGROUND

This consolidated action stems from operative facts similar to *Dupont v. Sklarsky* which was dismissed by this Court pursuant to an Opinion and Order dated March 20, 2009. *Dupont v. Sklarsky*, No. 08-1724, 2009 U.S. Dist. LEXIS 23056 (D.N.J. Mar. 20, 2009). Like the plaintiff in *Dupont*, the Plaintiffs in the instant actions, cashed out of the traditional KRIP retirement plan when they were transferred from Kodak to related entities in the late 1990s. When they were subsequently rehired by Kodak in 2005 and 2006, due to various corporate acquisitions, they were ineligible to participate in the traditional KRIP plan because they had previously elected to take lump sum distributions of their pensions. Instead they were reinstated as cash balance participants, a KRIP plan where the benefits accrue according to a formula different than the traditional KRIP. Plaintiffs allege that they were the victims of a fraudulent scheme perpetrated by Kodak to prevent them from accruing large pension benefits. (*Blood* Amended Complaint "*Blood* Am. Compl." ¶¶ 16-17; *Fish* Amended Complaint "*Fish* Am. Compl." ¶¶ 16-17. ) Detailed facts relevant to Jeffrey Blood ("Blood"), one of the lead plaintiffs in the *Blood* case are set forth below.[1]

Blood worked for Kodak from July 1981 until May 1999, when he was transferred to Heidelberg Digital, LLC ("Heidelberg"), a related entity.[2] (*Blood* Am. Compl. ¶¶ 19-20.) He

---

[1] In the interest of judicial economy and because the cases are consolidated, the Court will detail only the facts relevant to Jeffrey Blood.

[2] The rest of the *Blood* Plaintiffs left Kodak and joined either NexPress or Heidelberg in 1999. The *Fish* Plaintiffs left Kodak to join Kodak Polychrome Graphics ("KPG") in 1998. (Obstarczyk Declaration ("Decl.") ¶ 2.)

became vested in the traditional KRIP in July 1986. (*Id.* ¶ 20.) The benefits under the traditional KRIP increase with age and years of service with Kodak. (*Id.* ¶ 15.) He took a lump sum distribution of his pension in the amount of $98,665 upon his transfer.[3] (*Id.* ¶¶ 50-51.) In 2004, while Blood was still employed at Heidelberg, Kodak purchased all of Heidelberg's stock and formed NexPress Solutions, Inc. ("Nexpress").[4] (*Id.* ¶ 23.) Thereafter, in June 2006, Kodak acquired Nexpress and Blood once again became a Kodak employee. (*Id.* ¶ 24-25.) When he was rehired he was no longer eligible for the traditional KRIP plan because of his previous election. (Obstarczyk Decl. Exh. A, § 3.05(c).) Instead, he became a participant in the cash balance plan where the accrual benefits are calculated according to a different formula than the traditional KRIP.[5] (*Id.*) On May 28, 2007, Blood was laid off by Kodak because of financial troubles within the company. (*Blood* Am. Compl. ¶ 26.)

Blood, like the rest of the Plaintiffs, now claims that Defendants issued false and misleading information regarding the future of Plaintiffs' vested pensions when they were transferred from Kodak to Heidelberg/NexPress or KPG in the late '90s. (*Id.* ¶ 46; *Fish* Am. Compl. ¶ 46.) Specifically, Plaintiffs claim that Kodak informed them that once they were transferred, their Kodak pensions would not grow since they were no longer employed by Kodak.

---

[3]Blood claims that his distribution was calculated incorrectly and that he should have received $117,657. (Blood Am. Compl. ¶ 53.)

[4]All of the *Blood* and *Fish* Plaintiffs voluntarily took lump sum distributions of their pension entitlements when they left Kodak in either 1998 or 1999. (Blood Am. Compl. ¶ 9; *Fish* Am. Compl. ¶ 9; Obstarczyk Decl. ¶ 2.) The majority of the *Blood* and *Fish* Plaintiffs were rehired by Kodak in 2005 or 2006. (Obstarczyk Decl. ¶ 3.)

[5]Plaintiffs also claim that they were fraudulently induced to give up Kodak subsidized medical and insurance benefits that they would have attained if they remained participants in the traditional KRIP. (Blood Am. Compl. ¶ 60; Fish Am. Compl. ¶ 64.)

(*Blood* Am. Compl. ¶ 36; *Fish* Am. Compl. ¶ 33.) Plaintiffs further allege that at the time of their transfers, Defendants concealed the possibility of a 2007 amendment to the traditional KRIP plan which allows participants in the plan to count their years of service at Heidelberg/NexPress or KPG toward their pension entitlements. (*Blood* Am. Compl. ¶ 38; *Fish* Am. Compl. ¶ 36.) Additionally, Plaintiffs maintain that Defendants should have informed them of the possibility that they might be rehired by Kodak before they elected to take a lump sum pension payment. (*Blood* Am. Compl. ¶ 49; *Fish* Am. Compl. ¶ 53.)

To dispute their treatment as cash balance participants, Plaintiffs began the administrative claims process by submitting their claims to Defendants.[6] (*Blood* Am. Compl. ¶¶ 61-64; *Fish* Am. Compl. ¶¶ 65-68.) The *Blood* Plaintiffs' initial claims were denied on March 19, 2008 and the *Fish* Plaintiffs' claims were denied on April 29, 2008. (*Blood* Am. Compl. ¶ 62; *Fish* Am. Compl. ¶ 66.) Plaintiffs thereafter appealed the denial of their administrative claims on May 16, 2008 in *Blood* and on June 16, 2008 in *Fish*. (*Blood* Am. Compl. ¶ 64; *Fish* Am. Compl. ¶ 67.) The Defendants denied Plaintiffs' claims on the grounds that they were untimely under the terms of the KRIP plan on September 15, 2008 and October 14, 2008. (*Blood* Am. Compl. ¶¶ 65-69; *Fish* Am. Compl. ¶¶ 68-72.)

On December 12, 2008, the *Blood* Plaintiffs filed a three-count Complaint against Defendants. Shortly thereafter, on January 9, 2009, the *Fish* Plaintiffs filed a similar four-count

---

[6]The *Blood* Plaintiffs filed their claims on October 17, 2007 and the *Fish* Plaintiffs initiated the administrative process on February 11, 2008. (Blood Am. Compl. ¶ 61; Fish Am. Compl. ¶ 65.)

Complaint.[7] In January 2009, many Kodak employees were informed that they would be terminated as part of a reduction in workforce. (Defs.' Br. in Opp. to Mot. for Declaratory J.; Patricia A. Obstarczyk ("Obstarczyk") Decl. ¶ 2.) Accordingly, Kodak's 2009 Agreement, Waiver and Release ("release") was distributed to employees who were qualified under the Special Termination Program ("STP") of the KRIP plan. (*Id.* ¶¶ 1, 4.) Many of these qualified employees were Plaintiffs in this consolidated action.

On March 4, 2009, both the *Blood* and *Fish* Plaintiffs filed four-count Amended Complaints asserting violations of Sections 502(a)(1)(B) and 502(a)(3) of the Employee Retirement Income Security Act ("ERISA"); a claim for declaratory relief requiring the Defendants to produce documents relating to the establishment and operation of NexPress/Heidelberg and KPG; and a claim for declaratory relief preventing the Defendants from using the release to defend against Plaintiffs' ERISA claims. (*Blood* Am. Compl. ¶¶ 23-35; *Fish* Am. Compl. ¶¶ 24-35.)

On March 18, 2009, the *Blood* and *Fish* Plaintiffs moved to enjoin Defendants from using the Kodak general release form. The Court denied the injunction in an Order dated March 27, 2009. (*See* Order dated March 27, 2009.) Several days later many of the Plaintiffs signed the releases and thereafter were voluntarily dismissed from the lawsuit. (*See* docket entry # 20.) On April 2, 2009, Defendants' moved to dismiss the Amended Complaints which Plaintiffs oppose. Meanwhile, Plaintiffs' and Defendants' counsel negotiated a Stipulated Protective Order to govern the distribution of discovery documents including those that relate to the establishment

---

[7]The *Fish* case was initially assigned to the Honorable Mary Cooper of the United States District Court, District of New Jersey. *Fish* was transferred to the Honorable Joel Pisano and consolidated with *Blood* on March 25, 2009.

and operation of NexPress/Heidelberg and KPG (*See* docket entry # 23.)

## II.     DISCUSSION

### A.     Standards of Review

Defendants seek dismissal of the Amended Complaint under both Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of claims based on a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a court attaches "no presumptive truthfulness" to the allegations of the non-moving party, and "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen v. First Fed. Sav. and Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Challenges to jurisdiction under 12(b)(1) may be either facial or factual. *Turicentro v. Am. Airlines*, 303 F.3d 293, 300 n.4 (3d Cir. 2002).  A facial attack challenges the sufficiency of the pleadings and "the trial court must accept the complaint's allegations as true." *Id.*  However, in a factual attack, plaintiff's allegations are afforded no presumption of truthfulness therefore "the court must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." *Id.*  The plaintiff bears the burden of establishing that jurisdiction exists. *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006); *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 578 (D.N.J. 2002).

Under Federal Rule of Civil Procedure 12(b)(6), a court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted.  Refashioning the appropriate standard, the United States Supreme Court found that, "[w]hile a complaint attacked

by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s]" (internal quotation marks omitted)). Therefore, for a complaint to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 127 S. Ct. at 1965 (internal citations and footnote omitted).

**B.    Analysis**

1.    Counts I and II

a.    <u>Plaintiffs' Actions are Bared by both the ERISA Statute of Limitations and the Terms of KRIP</u>

i.    *Count I: ERISA Section 502(a)(1)(B)*

Plaintiffs seek reinstatement as participants in the traditional KRIP under Section 7.06 of the plan documents. ERISA Section 502(a)(1)(B) allows a plan participant to assert a cause of action to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132 (a)(1)(B). Here, Plaintiffs seek to enforce Section 7.06 of KRIP pursuant to

7

ERISA Section 502(a)(1)(B).  (*Blood* Am. Compl. ¶¶ 83-86; *Fish* Am. Compl. ¶¶ 83-86.) Section 7.06 of the KRIP allows "a participant in the . . . traditional KRIP Plan [who] was not given accurate information regarding the form or timing of benefit options offered under the Plan, . . . the opportunity through 'appropriate corrective action' to elect any such optional forms of benefit."  (*Blood* Am. Compl. ¶¶ 84.)

Plaintiffs argue that reinstatement is proper because they were not given accurate information regarding their distribution options under KRIP when they were initially transferred from Kodak in 1998 or 1999.  (*Blood* Am. Compl. ¶ 86; *Fish* Am. Compl. ¶ 89.)  However, as this Court explained in *Dupont*, Plaintiffs' claims under ERISA Section 502(a)(1)(B) are barred by the statute of limitations.  *Dupont*, 2009 U.S. Dist. LEXIS 23056, *19.  Since ERISA Section 502(a)(1)(B) does not provide a statute of limitations, federal courts apply the limitations period of the state law cause of action that is most analogous to the particular ERISA claim.  *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir. 1992).  The Third Circuit applies the limitations period for a breach of contract cause of action to Section 502(a)(1)(B) claims, which is six years under New Jersey law.  *Koert v. GE Group Life Assur. Co.*, 231 Fed. Appx. 117, 119 (3d Cir. 2007); *Klimowicz v. Unum Life Ins. Co. of Am.*, 2007 U.S. Dist. LEXIS 73162 at *15 (D.N.J. Sept. 28, 2007); N.J. Stat. Ann. § 2A:14-1.  Plaintiffs seek to be reinstated in the traditional KRIP pursuant to ERISA Section 502(a)(1)(B) based on the events that occurred in either 1998 or 1999 when they received information regarding their pension options.  Applying the six-year statute of limitations, the time to bring this ERISA claim expired in either 2004 or 2005.  As such, Plaintiffs' claims are time barred.

     ii.  *Count II: ERISA Section 502(a)(3)*

  Plaintiffs seek an equitable lien under ERISA Section 502(a)(3) on the monies held by KRIPCO because Defendants "failed to inform plan participants of all material facts required for them to make an informed decision as to whether to 'sell' their participation in the traditional KRIP Plan" in violation of their fiduciary obligations to Plaintiff. (*Blood* Am. Compl. ¶ 94; *Fish* Am. Compl. ¶ 97.)  As in *Dupont*, Defendants argue that the Plaintiffs' claim must be dismissed because it is barred by the applicable statute of limitations.

  ERISA Section 502(a)(3) allows a plan participant to seek equitable relief.  Specifically, this section provides that a:

> participant, beneficiary, or fiduciary [with the power] . . . to obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan.

29 U.S.C. § 1132(a)(3).

  A Section 502(a)(3) claim is timely if Plaintiff commences the action

> after the earlier of (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation; <u>except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation</u>. (emphasis added)

29 U.S.C. § 1113.

  The "fraud or concealment" exception to the three-year limitations period extends the period to "six years after the date of discovery of such breach of violation."  29 U.S.C. § 1113.  The issue raised by this provision is "whether the fiduciary took steps to hide its breach so that the statute should not begin to run until the breach is discovered."  *In re Unisys ERISA Litig.*, 242

9

F.3d 497, 502 (3d Cir. 2001).  In addressing this issue, courts must decide "whether there is evidence that the defendant took affirmative steps [at any point] to hid its breach". . . "not whether the complaint 'sounds in concealment.'" *Id.*

Plaintiffs claim that Defendants concealed the following information: (1) the fact that some employees who had been transferred, and later rehired by Kodak, were able to count their years of service at affiliated entities toward the calculation of their Kodak retirement benefits; (2) the 2007 amendment to the KRIP Plan; (3) documents requested by Plaintiffs; and (4) the fact that STP benefits were funded by monies held in trust for the benefit of participants in the traditional KRIP Plan.  (*Blood* Am. Compl. ¶¶ 95-96; *Fish* Am. Compl. ¶¶ 98-99.)  The Court finds that Plaintiff alleged no facts suggesting that Defendants took affirmative steps to conceal this information.  Additionally, Plaintiffs have not pled facts indicating that they would not have taken the lump sum distribution if they had known about the recognition of future service.  Moreover, the Court once again finds that Defendants were under no obligation to provide Plaintiffs with information relating to potential amendments to the KRIP.  *See Peterson v. AT&T*, 127 Fed. Appx. 67, 71 (3d Cir. 2005) (fiduciaries need only discuss amendments to pension terms that are under serious consideration) (citing *Fischer v. Phila. Elec. Co.*, 96 F.3d 1533, 1538-39 (3d Cir. 1996)).  Plaintiff, therefore, cannot utilize the "fraud or concealment" provision of the limitations period.

Similarly, Plaintiffs' lawsuit is untimely under the terms of KRIP.  *See Fontana v. Diversified Group Adm'rs, Inc.*, 67 Fed. Appx. 722, at *3-5 (3d Cir. May 13, 2003) (upholding the limitations period established in benefit plan); *Koert v. GE Group Life Assur. Co.*, 416 F. Supp. 2d 319, 322 (E.D. Pa. 2005) (same).  Under KRIP a lawsuit must be initiated the earlier of

"90 days after the date of the Appeal Letter ... or 1 year from the date a cause of action accrues." (Obstarcyzk Decl. Exh. A, § 13.03(e)(3)(A).) Under this section, "a cause of action accrues upon a denial or repudiation by a Plan Party ... or should with reasonable diligence be known, to the Person bringing the Action, regardless of whether such person has filed a Claim in accordance with the provisions of this Section 13.03." *Id.*

Here, Plaintiffs' claims arise from the events surrounding their decision to take lump sum distributions of their pensions in 1998 and 1999. Accordingly, their lawsuit would have been timely in 1999 or 2000. Since the consolidated actions were initiated in 2009, the Court finds their suits untimely under the one-year time requirement.

Furthermore, Plaintiffs are also barred under KRIP's 90-day time limit to commence an action after the date of the appeal letter. The Defendants denied Plaintiffs' appeals in letters dated September 15, 2008 and October 14, 2008. In the letters, which were addressed to Plaintiffs' counsel, Mr. Robert Jaffe ("Jaffe"), the Plan Administrator clearly explained that if Plaintiffs chose to file suit they "must file the lawsuit with the court and serve the Plan Administrator within 90 days of the date of this letter" (emphasis added). (Obstarczyk Decl.; Exhs. F and G; p. 24.) Accordingly, Plaintiffs should have filed and served their Complaints by December 14, 2008 and January 12, 2009. Although the Complaints were filed within the 90-day deadline, the Defendants were not served until January 21, 2009. (Obstarczyk Decl. ¶ 9.) Because the service deadline and requirement was clearly communicated to Jaffe, the Court finds Plaintiffs lawsuits are untimely under the terms of KRIP.[8]

---

[8] Additionally, the Court reiterates its finding from *Dupont* that Section 502(a)(3) is duplicative of Section 502(a)(1)(B) because Plaintiffs are seeking an equitable lien which "does not constitute additional relief that would not be provided through [their] 502(a)(1)(B) claim."

11

Accordingly, for the reasons stated above, Counts I and II of Plaintiffs' Amended Complaints are time barred.

        b.      <u>Plaintiffs' Lack Standing to Assert these Counts</u>

Defendants contend that Plaintiffs lack standing under ERISA because they received the full value of their KRIP benefits when they took distributions in 1998 and 1999. (Defs.' Br. p. 29.) On the other hand, Plaintiffs claim that they have standing as both former and current KRIP members. They contend that they are current KRIP members because they did not receive the benefit of the 2007 amendment to the KRIP Plan which would have credited their years of service at KPG and NexPress/Heidelberg. (*Blood* Am. Compl. ¶ 6; *Fish* Am. Compl. ¶ 6.)

Under ERISA, only "participants, beneficiaries, fiduciaries, and the Secretary of Labor" have statutory standing. *Graden v. Conexant Sys.*, 496 F.3d 291, 295 (3d Cir. 2007). A participant is "any employee or former employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7); *Id.* at 296. A former employee may be considered a participant if he "ha[s] . . . a reasonable expectation of returning to covered employment" or has "'a colorable claim' to vested benefits." *Shawley v. Bethlehem Steel Corp.*, 989 F.2d 652, 656 (3d Cir. 1992) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103 (1989)).

The Court once again reiterates its finding in *Dupont* to conclude that Plaintiffs lack standing under ERISA as both current and former participants. First, Plaintiffs have taken their full distributions from the traditional KRIP in 1998/1999. Although, Plaintiffs argue that Defendants concealed the fact that Kodak may amend KRIP in the future to recognize service at

---

*Dupont*, 2009 U.S. Dist. LEXIS 23056 at *27.

other employers, this argument is based on the assumption that Kodak knew, in 1998 or 1999, of the possibility of a 2007 amendment. Plaintiffs do not allege any facts suggesting that Kodak had such foresight and the Court finds that this possibility is too speculative to classify Plaintiffs as current participants in the traditional KRIP Plan.

Second, Plaintiffs lack standing as former participants. Plaintiffs have not alleged any facts indicating that they "have . . . a reasonable expectation of returning to covered employment." *Shawley*, 989 F.2d at 656. Additionally, Plaintiffs have no "'colorable claim' to vested benefits since the statute of limitations has run on their Section 502(a)(1)(B) claim where they challenge the value of their 1998/1999 payments. *Id.* Furthermore, the Court finds that Plaintiffs' allegations that they should have received greater pension distributions under the traditional KRIP when they were transferred in the late '90s is without merit. Defendants hired an independent actuarial consultant who recalculated and confirmed that the representative Plaintiffs' lump sum distributions in 1998 and 1999 were accurate. (Obstarczyk Decl. ¶ 4.) Since the Court may consider evidence outside the pleadings under 12(b)(1), the Court finds that Plaintiffs' lump sum distributions were calculated correctly in 1998 and 1999. *Med. Soc'y of N.J. v. Herr*, 191 F. Supp. 2d 574, 579 (D.N.J. 2002) (court considered evidence outside the pleadings in standing analysis). As such, Plaintiffs lack standing under ERISA because they do not qualify as either current or former participants.

        c.    <u>Counts I and II of Plaintiffs' Amended Complaints Do Not Satisfy the *Twombly* Standard</u>

Counts I and II of Plaintiffs' Amended Complaints are based on the theory that they may not have elected to receive lump sum distributions in 1998 or 1999 had they known of the

possibility that they would eventually be rehired by Kodak and that KRIP would be amended to reflect service at previous employers. Plaintiffs claim that this information was concealed from them, however, their Amended Complaints are devoid of facts suggesting this concealment occurred. Moreover, Plaintiffs offer no facts indicating that Defendants were seriously considering amending KRIP in 1998 or 1999. Furthermore, the Amended Complaints contain no factual allegations that Defendants knew, in 1998 or 1999, that Plaintiffs would someday be once again employed by Kodak and therefore induced them to cash out of their pension benefits. Because Plaintiffs' factual allegations are not enough "to raise a right to relief above the speculative level," Plaintiffs' Amended Complaint is dismissed. *Twombly*, 127 S. Ct. at 1965.

2.      Count IV[9]

In Count IV of the Amended Complaints, Plaintiffs seek declaratory relief from the Court preventing Defendants from raising Plaintiffs' executions of the release as a defense to their ERISA claims.

Under ERISA, an employer may require employees to sign releases in exchange for severance benefits. *Lockheed Corp. v. Spink*, 517 U.S. 882, 894-95 (1996); *Linden v. SAP Am., Inc.*, No. 03-3125, 2004 U.S. Dist. LEXIS 8598, *11 (E.D. Pa. May 7, 2004) (stating that according to *Lockheed* "a waiver or release of claims is permissible" under ERISA). As such a general release is valid as long as it is executed in a knowing and voluntary manner. *Cuchara v.*

---

[9]The Court also dismisses Count III of the Amended Complaints where Plaintiffs ask the Court to require Defendants to provide Plaintiffs with documents relating to the establishment and operation of KPG. (*Blood* Am. Compl. ¶¶ 97-103; *Fish* Am. Compl. ¶¶ 100-06.) Defendants agreed to provide these documents to Plaintiffs subject to a protective order entered by the Court. (Mem. of Law in Support of Def.'s Mot. to Dismiss p. 5, n. 9; p. 53). Because the parties entered into a protective order on April 6, 2009 (*See* docket entry # 23), the Court dismisses Count III as moot.

*Gai-Tronics Corp.*, 129 Fed. Appx. 728, 730-31 (3d Cir. May 4, 2005) (citing *Coventry v. United States Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988)).

Here, Plaintiffs have not argued that the releases are invalid because they were executed unknowingly or involuntarily.[10]  Plaintiffs, do however, cite the totality of the circumstances test stated in *Long v. Sears Roebuck & Co.*, 105 F.3d 1529, 1538 (3d Cir. 1997) and *Laniok v. Advisory Committee*, 935 F.2d 1360, 1367-68 (2d Cir. 1991) to argue that the release forms are "illegal, void, and unenforceable." (*Blood* Am. Compl. ¶ 113; *Fish* Am. Compl. ¶ 110).  These tests set forth various factors to consider when analyzing the validity of releases including: "(1) the clarity and specificity of the release language, (2) the plaintiff's education and business experience, [and] (3) the amount of time plaintiff had for deliberation about the release before signing it." *Long*, 105 F.3d at 1538.  Other than citing the test, Plaintiffs do not provide any facts supporting their allegations that the waivers are invalid.  The Court, therefore, dismisses Count IV of the Amended Complaints.

      3.    Rule 11 Sanctions

Defendants move for sanctions under Rule 11(b) and (c) which state that an attorney who files any pleading, motion, or other paper with the court certifies that "the claims, defenses, and

---

[10]Plaintiffs, however, claim that because Kodak amended the releases in December 2008, they acknowledged that the pre-December 2008 releases were ambiguous. (*Blood* Am. Compl. ¶ 77; *Fish* Am. Compl. ¶ 80).  The Court finds that Defendants did not acknowledge that the pre-December 2008 general releases were ambiguous in either their motion papers or at oral argument held on March 27, 2009 regarding Plaintiffs' request to preliminarily enjoin the use of the releases.  Similarly, the Court finds that Plaintiffs' allegation that the releases do not comply with Section 626 of the Older Workers' Benefit Protection Act ("OWBPA") to be without merit because the OWBPA only pertains to the release of claims under the Age Discrimination in Employment Act ("ADEA") and is not applicable to ERISA. (*Blood* Am. Compl. ¶ 109; *Fish* Am. Compl. ¶ 112).  *Frommert v. Conkright*, 535 F.3d 111, 122 n. 4 (2d Cir. 2008).

other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and "that the factual contentions have evidentiary support."  Fed. R. Civ. P. 11.  Defendants claim that the *Blood* and *Fish* cases are "undeniably frivolous" in light of the Court's findings in *Dupont*.  (Def.'s Mem. of Law in Supp. of Mot. for Sanctions Under Fed. R. Civ. P. 11., p. 5.)

Although the Court agrees that Plaintiffs' claims are frivolous, in an effort to put an end to the *Dupont* and *Blood/Fish* litany of litigation, and to avoid any further collateral attacks on this Court's decisions in the form of requests for reconsideration, the Court, in its discretion, denies Defendants' Motion for Rule 11 Sanctions.

### III.   CONCLUSION

For the reasons expressed above, the Court grants Defendants' Motion to Dismiss the Amended Complaints and denies Defendants' Motion for Rule 11 Sanctions.  An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: August 10th, 2009